# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 8:05CR139 |
| vs. ) | |
| ) | **REPORT AND** |
| WILLIAM ANDREWS, JR., ) | **RECOMMENDATION** |
| ) | |
| Defendant. ) | |

This case is before the court on the MOTION TO SUPPRESS (#20) filed by defendant William Andrews, Jr. The motion was heard August 2, 2005 and was deemed submitted with the filing of the Transcript (#34) on August 9, 2005.

Andrews seeks the suppression of all evidence discovered during a traffic stop on April 11, 2005. Specifically, Andrews alleges that the stop of his vehicle occurred without probable cause or reasonable suspicion to believe that he had committed a crime and, therefore, violated his rights under the Fourth Amendment to the United States Constitution. Andrews also alleges that law enforcement's actions were racially motivated and that the traffic stop was a mere ruse to conduct a criminal investigation and, therefore, violated the Fourteenth Amendment's Equal Protection Clause.

## FACTUAL BACKGROUND

Randy Brown testified he is an employee of the Seward County Sheriff's Department and that for the last four years he has served as a deputy sheriff in the patrol division monitoring traffic and upholding local and state laws. On April 11, 2005 at approximately

1530 hours while traveling home to Seward, he drove his patrol car into the Shell gas station on the south side of Interstate 80. As he pulled into the station to check on the attendants, he observed a green Bravada parked under the shelter in the middle of the gas pumps (5:22-6:8). As he pulled up beside the Bravada, he observed a male standing outside the Bravada and attempted to make eye contact with him, but the individual did not make eye contact (6:10-13). Brown, after observing other persons at the gas station, turned and came back by the window of the gas station where he made eye contact and waved at the attendants. He turned his head to his left towards the Bravada and again attempted to make eye contact. He observed the male still standing by the Bravada, and again the male did not make eye contact (6:13-19). The failure to make eye contact concerned Andrews because it appeared to him that the male was trying to avoid him and not pay attention to him (6:18-21).

Brown then turned his patrol car in the direction of the highway, but stopped at the edge of the gas station parking lot near the exit and called deputy Bill Maddox of the Seward County Sheriff's Department. Brown advised Maddox of his location and that a male at the gas station, because of his actions, had caught Brown's attention (6:21-7:3).

Brown testified that he then observed the male drive the Bravada from the gas station parking lot onto the roadway without looking to his right, the direction where Brown's patrol car was positioned. Brown pulled behind the Bravada and followed it onto Interstate 80 eastbound at mile marker 379 (7:4-10). Brown testified the Bravada stayed in the right lane

and he positioned his patrol car in the left lane. As the Bravada continued in the right lane, it approached a semi tractor-trailer at approximately mile marker 380 (7:10-15). Brown observed that it was raining off-and-on (8:12-13) and that the Bravada approach the rear of the tractor-trailer at a distance he believed was not reasonable and prudent, so he elected to time the distance between the front of the Bravada and the rear of the semi-trailer (9:1-11).

Brown testified he started his stopwatch as the rear of the tractor-trailer approached a reflector post and when the front of the Bravada reached the same post, he stopped the stopwatch obtaining a reading of 1.55 seconds (10:8-16). Brown again concluded the Bravada was not a reasonable and prudent distance behind the tractor-trailer, based upon the "two-second rule" and the weather conditions (10:18-23).

Brown testified he uses the two-second rule because it is referred to in most driver's manuals and, based on his experience, under normal driving conditions, it takes approximately one second to react to a situation and it takes another second to react on that reaction (11:1-6).

Brown testified that he remained in the left lane watching the Bravada as it merged into the left lane and pass the tractor-trailer. Brown then activated his overhead lights (11:9-11). Brown noted that in activating his overhead lights, he also activated a camera and videotape recorder and that the videotape (Ex. 1) produced, fairly and accurately depicts the events that took place from activation to the conclusion of his contact with Andrews (12:6-15). Brown noted that at the beginning of the videotape (Ex. 1), the semi tractor-trailer

which can be observed in the right lane is the same tractor-trailer he references in his testimony (13:3-8).

Brown testified he stopped the Bravada at approximately mile marker 381 near the Milford rest area, where he contacted the driver and told him he should pull into the rest area (11:17-25).

On cross-examination Brown testified that before he went to the gas station he had been in court, and was traveling home (14:4-6). He admitted that when he stopped at the gas station he was looking at vehicles and people, and noticed Andrews outside of the Bravada (15:8-15). He also admitted that while he observed Andrews, Andrews did nothing out of the ordinary (15:21-24), and he also admitted that he noticed that Andrews was a black male (15:25-16:2). Brown admitted he never got out of his patrol vehicle and approach Andrews (16:11-23), nor did he signal Andrews that he wanted to talk to him.

On cross-examination Brown again testified that he was bothered by Andrews' lack of eye contact which caused him to think there might be something going on (16:20-17:3), and to feel that Andrews was trying to avoid him (17:4-7).

While admitting that he had discussed the motion to suppress with the government's attorney, Brown denied being aware that one of the issues was an equal-protection argument based on racial profiling. Brown noted that it was his understanding that the motion was based on the probable cause for the stop (17:8-19).

Brown admitted on cross-examination that his written narrative report does not contain any facts about the occurrences at the gas station, why he stopped at the gas station, or Andrews' lack of eye contact (18:4-7). Brown stated that after making contact with Andrews at the stop, he asked Andrews to exit his vehicle and have a seat in the patrol car and, while in the patrol car, he informed Andrews he was going to write him a warning ticket (21:9-15). Brown noted that when he stops a person for a traffic violation he takes the person to his car ninety percent of the time (21:20-22).

On cross-examination Brown testified that if a car is going 75 miles an hour in 1.55 seconds, it will cover over 200 feet and that a typical car is approximately fifteen feet long (22:11-16).

On re-direct examination Brown testified that the fact that Andrews was an African-American was not a factor in the stop.

William Andrews, Jr. testified that he has lived his entire life, 33 years, in Chicago, Illinois, where he is employed at CH Millery as a carpenter. He admitted driving east on Interstate 80 towards Chicago and stopping at a gas station in Nebraska because he needed fuel (40:1-21).

Andrews testified that at the gas station he went to the cashier to pay for the gas before pumping the gas and that he did not see the deputy in the patrol car prior to paying; however, as he exited after paying, he saw the deputy sitting off quite a distance (41:3-10). Andrews testified that while he pumped the gas and he cleaned his windows, the deputy was

present the entire time (41:21-25). Andrews admitted he did not make direct eye contact with the deputy (42:8-9) and after he pumped the gas, he got in the vehicle, put on his seatbelt and proceeded onto I-80 (42:10-18). Andrews testified that as he left the gas station he pulled up to a stop sign and looked both ways because he always looks both ways before pulling onto the interstate (42:23-43:2).

Andrews testified that after entering the Interstate he drove at 74 miles per hour with his cruise control set (43:11-15), came upon a truck, put on his turn signal, proceeded to the next lane (43:17-20), and based on the driving conditions he did not see a problem while he was behind the truck (43:21-23).

On cross-examination Andrews testified he was not nervous when he saw the deputy's vehicle pull into the gas station (44:4-10), that it did not start raining until after his vehicle was pulled over (44:11-13), and he admitted he does not know if there is a stop sign as you leave the gas station or when you merge onto Interstate 80 as he had testified, but he does know he looks both ways before he gets to an intersection (44:19-45:2).

## LEGAL ANALYSIS

### A.     Probable Cause To Stop

The Eighth Circuit in *United States v. Mallari*, 334 F.3d 765, 766-67 (8th Cir. 2003) has stated:

> We have repeatedly held that "any traffic violation, – regardless of its perceived severity, provides an officer with probable cause to stop the driver." *United States v. Jones*, 275 F.3d 673, 680 (8th Cir. 2001). "To determine whether a traffic stop was based on probable cause or was merely pretextual,

an 'objective reasonableness' standard is applied." An officer is justified in stopping a motorist when the officer "objectively has a reasonable basis for believing that the driver has breached a traffic law." *United States v. Thomas*, 93 F.3d 479, 485 (8th Cir. 1996); *see Sanders*, 196 F.3d at 913 (officer's mistaken belief, but objectively reasonable basis for believing, that a traffic violation occurred supported traffic stop). Moreover, subjective intent is not determinative in deciding whether the stop as reasonable. *See Whren v. United States*, 517 U.S. 806, 813 (1996).

The evidence in this case establishes that on April 11, 2005, Seward County Deputy Sheriff Randy Brown was eastbound on Interstate 80 at approximately mile marker 380 when he observed Andrews' Bravada following a tractor-trailer. Brown testified that using the two-second rule, he determined with a stopwatch that Andrews' Bravada was within 1.55 seconds of the rear of the tractor-trailer.

Neb. Rev. Stat. § 60-6,140[1] provides that the driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the roadway. Brown concluded that Andrews' Bravada was traveling closer to the tractor-trailer than was reasonable and prudent based on the conditions, first by observation and then by applying the two-second rule. The two-second rule has been approved as a basis for determining whether a vehicle is following another too closely, and the circumstances that would justify law enforcement's execution of a stop. *See, United States v. Perez*, 200 F.3d 576 (8th Cir. 2000), and *United*

---

[1] During the hearing on the motion, the court took judicial notice of Neb. Rev. Stat. §§ 60-6,140 and 60-6,133. Section 60-6,133 addresses "Overtaking and passing rules; vehicles proceeding in same direction."

*States v. Gregory*, 302 F.3d 805 (8th Cir. 2002), *cert. denied*, 538 U.S. 992 (2003). The two-second rule is especially appropriate in this case because of the road conditions at the time of the violation as shown on the videotape (Ex. 1), i.e., rain and a wet highway surface.

I have reviewed the video and while the violation does not appear on the videotape, I find Brown's testimony to be credible. I also note the video reflects that he issued Andrews a warning ticket for following too close. The traffic violation provided probable cause for stopping the vehicle. For these reasons, Andrews' first claim must be denied.

### B.     Equal Protection Claim

The parties agree that Andrews' claim of pretext is based on allegations of racial profiling resulting from Andrews' African-American ancestry, a matter that is governed by *United States v. Whren*, 517 U.S. 806 (1996). In *Whren*, the United States Supreme Court sets out the standards for reasonableness of traffic stops and the motivation of officers making those stops. *Whren* holds that the Constitution prohibits selective enforcement of the law based upon race. *Id.* at 813.

The Eighth Circuit recently considered an equal protection argument in *United States v. Frazier*, 408 F.3d 1102 (8th Cir. 2005), a case originating in the District of Nebraska. Frazier argued on appeal that he and his passenger were the subject of racial discrimination and targeted for investigation because of their race. Such a claim requires "proof that the investigators targeted [the defendant] solely because of his race." *Frazier*, 408 F.3d at 1108.

> "An officer is not held to a 'suspicion of criminal activity standard' when he embarks to investigate someone. The officer merely is prohibited from his

-8-

> pursuit if he acts based solely on race." [*United States v. Avery,* 137 F.3d 343, 358 (6th Cir. 1997)]. In a pre-contact type of case such as this one (the stage at which an officer decides to target someone for surveillance), Frazier may prove a prima facie equal protection claim with direct evidence of racial discrimination. [*Johnson v. Crooks,* 326 F.3d 995, 1000 (8th Cir. 2003)]; *see also Avery*, 137 F.3d at 355 (discussing the equal protection analysis and highlighting the fact that ultimately the "stage" of investigation is irrelevant; the inquiry is whether a government actor has imposed unequal burdens based upon race).

*Id. See also United States v. Hare*, 308 F. Supp. 2d 955 (D. Neb. 2004).

Reviewing the evidence in its totality, I find insufficient evidence to support such a claim or prove a *prima facie* equal protection claim. Under Eighth Circuit precedent, the defendant must """identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive.""" *Frazier*, 408 F.3d at 1108 (quoting *Johnson*, 326 F.3d at 1000, in turn quoting *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998)). A defendant's attack on the officers' credibility, standing alone, is insufficient to establish an equal protection violation. *See id*.

The videotape demonstrates Brown's conversation with Andrews to be professional, courteous, and pleasant. After reviewing the record and viewing the video, I find no evidence that would justify a finding that Brown deprived Andrews of equal protection under the law, or that a motivating reason for the stop was Andrews' African-American ancestry. Accordingly, defendant's Equal Protection claim must also be denied.

For the foregoing reasons,

**IT IS RECOMMENDED** to the Honorable Joseph F. Bataillon that the defendant's MOTION TO SUPPRESS (#20) be denied.

Pursuant to NECrimR 57.3, a party may object to this Report and Recommendation by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten (10) calendar days after being served with the recommendation. The statement of objection shall specify those portions of the recommendation to which the party objects and the basis of the objection. The objecting party shall file contemporaneously with the statement of objection a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.

**DATED August 23, 2005.**

        **BY THE COURT:**

        **s/ F.A. Gossett**
        **United States Magistrate Judge**